STEVENSON, Judge.
The question in this appeal is whether the clerk of the circuit court must refund registry and sales fees to a successful bidder at a foreclosure sale where the mortgagor/debtor, prior to the sale and without written notice to the clerk, has filed a suggestion of bankruptcy in federal court, requiring the sale to be later invalidated. On the authority of Bauer v. Resolution Trust Corp., 621 So.2d 521 (Fla. 4th DCA1993), we answer this question in the negative and reverse the two separate orders of the circuit court below requiring the clerk to refund sales fees and registry fees.
In Bauer, a summary judgment was entered in favor of the Resolution Trust Corporation (“RTC”), in its suit to foreclose a mortgage. The Clerk of the Circuit Court of Palm Beach County published notice of sale and eventually sold the mortgaged property to Mr. and Mrs. Medalian, who paid a total of $62,529 to the clerk, representing a $61,500 bid, $369 for documentary stamps and $40 for a sales fee. The clerk issued the required certificate of sale on the same day as the foreclosure. 621 So.2d at 522. Subsequently, RTC filed a motion to set aside and reset the foreclosure sale, alleging that its counsel was mistaken as to RTC’s instructions and thus bid incorrectly at the sale. The court granted the motion, set aside the sale, and ordered the clerk to resell the *182 property. RTC was the successful bidder at the subsequent foreclosure sale. Id.
Meanwhile, the clerk returned to the Me-dalians the amount of their bid ($61,500) and documentary stamps paid ($369), but retained the registry and sale fees ($620 and $40, respectively). Thereafter, the Medali-ans moved the court to tax all costs against RTC, claiming that the vacating of the foreclosure sale was in no manner due to their own mistake or neglect. The trial court entered an order denying the Medalians’ motion, but ordering the clerk to refund the fees retained. The clerk challenged the order directing him to refund the $660 tendered by the Medalians. Id. at 521.
On appeal, this court examined sections 28.24 and 45.031(1), Florida Statutes (1991), to determine if the fees paid should be returned to the Medalians. First, the court pointed out the schedule of charges for services rendered by the clerk’s office as set forth in section 28.24 is mandatory. Because one of the clerk’s services included in section 28.24 is the handling of money received into the court registry, the court concluded that collection of the scheduled charge for this service is mandatory. Id. at 522.
Second, the court noted that section 45.031(1), which governs the judicial sales procedure, provides that the clerk “shall” receive a service charge of $40 for services in making, recording, and certifying the sale and title. The court concluded that the use of the word shall in section 45.031(1) made collection of the judicial sale fee of $40 mandatory as well. Id. Further, the court noted that “if there is to be any exceptions to the clerk’s entitlement to collect these charges, then the legislature must make that exception clear.” Id. at 523 (citing Op. Att’y Gen. 83-7 (1983)).
The holding in Bauer may be considered to stand for the proposition that the clerk “earns” the statutory sales and registry fees when the services are rendered, i.e., when the judicial sale takes place and the funds are received into the court registry. 621 So.2d at 522; §§ 28.24(13) & 45.031(1), Fla.Stat. (1993). Therefore, that the sale is later invalidated through no blunder of the clerk is of no consequence in determining whether or not the clerk is entitled to collect his or her administrative costs.[1] Here, as in Bauer, the initial successful bidders may ask the court below to exercise its discretion and require any party which the court determines to be culpable to reimburse the forfeited sales and registry fees.
The clerk points out to this court that the issues involved in this appeal, while involving only a small amount of money in the instant cases, is a “repeated” and “significant” problem in the administration of judicial sales at the courthouse. The clerk states in her initial appellate brief:
Foreclosure sales are attractive because of the prospective profits, but they are often plagued with problems because they are based on foreclosures, against the will of the owner/debtor. Thus, unlike an ordinary sale between a willing buyer and a willing seller ... [buyers at foreclosure sales] choose to become involved in a procedure that is not without risk.
Although the purchase of property at a judicial sale should be well recognized as a risky venture, the general public may not be aware of the risk of losing the court registry and sales fees if the transaction is voided or simply fails to go through. Accordingly, we believe that the public would be well served if the clerk would devise some method of notice to those involved in these types of purchases which would warn them of these particular risks associated with foreclosure sales. We hasten to add that this is only our suggestion as we are quite reluctant to impose a notice requirement not mandated by statute.
REVERSED.
GLICKSTEIN and PARIENTE, JJ., concur.

. Of course, the result which we reach in this case might be different if the sale had been invalidated due to some misfeasance on the clerk's part. However, in each instance in the present appeal, the clerk promptly acted on the written information of the pending bankruptcy actions as soon as the information was received.